1  WRIGHT, FINLAY & ZAK, LLP
   Chelsea A. Crowton, Esq.
2  Nevada Bar No. 11547
   5532 South Fort Apache Road, Suite 110
3  Las Vegas, Nevada 89148
   (702) 475-7964; Fax: (702) 946-1345
4  ccrowton@wrightlegal.net
   *Attorney for Defendant, Wells Fargo Bank, N.A.*
5

6                    **UNITED STATES DISTRICT COURT**
7                        **DISTRICT OF NEVADA**

8  LN MANAGEMENT LLC SERIES 5204          Case No.: 2:13-cv-01200-LDG-PAL
9  PAINTED SANDS

10                Plaintiff,              **DEFENDANT WELLS FARGO BANK,**
                                          **N.A.'S SUPPLEMENTAL BRIEF**
11         vs.

12
   WELLS FARGO BANK, N.A.; QUIXOTE
13 VENTURES OPPORTUNITY FUND, LLC, a
   Nevada limited liability company; and DOES 1
14 through 10, inclusive,

15
                Defendants.
16

17

18        The Defendant, Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), by and through its

19 attorney of record, Chelsea A. Crowton, Esq. of the law firm of Wright, Finlay & Zak, LLP,

20 hereby submits its Supplemental Brief pursuant to the Court's Order dated December 12, 2013 as

21 Docket Number 30.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1    The Supplemental Brief is based on the attached Memorandum of Points and Authorities,

2  all papers and pleadings on file herein, all judicially noticed facts, and on any oral or

3  documentary evidence that may be presented at a hearing on this matter.

4  DATED this 10th day of January, 2014.

5                                       WRIGHT, FINLAY & ZAK, LLP

6

7                                       Chelsea A. Crowton, Esq.

8                                       Nevada Bar No. 11547
                                        5532 South Fort Apache Road, Suite 110
9                                       Las Vegas, NV 89148
                                        *Attorney for Defendant, Wells Fargo Bank, N.A.*
10

11                    **MEMORANDUM OF POINTS AND AUTHORITIES**

12                         **I.        INTRODUCTION**

13    The issue of due process and "notice" to lienholders is a vital part of the interpretation of

14  the statutory interaction between a first deed of trust and the super-priority lien.  The lack of

15  mandatory "notice" to all lienholders eliminates the due process rights of lienholders and shows

16  the legislative intent to preserve a first position deed of trust after an HOA Sale on a super-

17  priority lien.  If Chapter 116 is interpreted as Plaintiff would have, violation of the constitutional

18  due process rights of holders of the first deed of trust is guaranteed because if the first position

19  deed of trust could be extinguished without a right to provide notice to the first priority

20  lienholder of the amount of the deficiency, notice of the amount of the deficiency on which

21  super-priority is claimed, and notice of the HOA foreclosure sale and without the express right to

22  cure the deficiency or even the super-priority amount.  If Chapter 116 is interpreted as Wells

23  Fargo would have, the due process rights of the priority lienholder are protected because it could

24  not lose its interest without notice or the opportunity to cure.  The removal of mandatory notice

25  and the right to cure by amendments to the foreclosure process under NRS Chapter 116 in 1993

26  requires the Court to interpret N.R.S. 116.3116(2)(b) as preserving priority status of the first

27  deed of trust after an HOA sale.

28

## II.    LEGAL ARGUMENTS

### A.  THE LEGISLATIVE HISTORY OF N.R.S. 116.3116 PROVES THAT THE LACK OF A MANDATORY NOTICE TO LIENHOLDERS EQUATES WITH A VIOLATION OF CONSTITUTIONAL DUE PROCESS RIGHTS.

At that time N.R.S. 116.3116 was adopted in 1991, the UCIOA (1982) required that the HOA lien foreclosures be done in accordance with the traditional foreclosures in the state, and so did N.R.S. 116.3116.[1] But the current version of N.R.S. 116.3116 follows from the radical revision passed by the 1993 Legislature that removed the notice requirements and the ability to cure found in non-judicial foreclosures under N.R.S. 107.080 and created the variant foreclosure scheme under N.R.S. 116.31163, discussed in depth below. Unlike in UCIOA (1982) § 3-116(j)(4), in Nevada, the HOA can bring a judicial foreclosure action, it can assert its super-priority lien on a foreclosure under a deed of trust, or it can non-judicially foreclose under the unique procedure in N.R.S. 116.3116 et seq., particularly N.R.S. 116.31163. Contrary to Plaintiff's belief how the Act should work, however, no **UCIOA state has concluded that a non-judicial HOA foreclosure sale can eliminate a senior deed of trust.** Colorado, Connecticut, Delaware, Vermont, Alaska, and West Virginia, six of the other seven UCIOA jurisdictions, do not allow a non-judicial HOA foreclosure sale to eliminate a senior deed of trust, and only allow an HOA to foreclose its super priority lien judicially or "like a mortgage on real estate."[2]  When the lienholder is no longer required to get notice of the sale, and is no longer expressly permitted to cure the deficiency, Plaintiff's reasoning fails in this case.

Plaintiff fails to address the marked differences between non-judicial foreclosure under Chapter 107 and non-judicial foreclosures under Chapter 116.  While the two were identical when Nevada's version of the UCIOA was enacted in 1991, material changes since that time

---

[1] Uniform Common Interest Ownership Act (1982) provided at § 3-116(j)(4): "The association's lien may be foreclosed as provided in this subsection: ...  (4) In the case of foreclosure under [insert reference to state power of sale statute], **the association shall give reasonable notice of its action to all lien holders of the unit whose interest would be affected.**" (Emphasis added.)
[2] See Colo. Rev. Stat. § 38-33.3-316 (11)(b); Conn. Gen. Stat. § 47-258 (j); Del. Code Ann. Tit. 25, § 81-316(j); Vt. Stat. Ann. Tit. 27A, § 3-116(j); Alaska Stat. § 34.08.470 (j); W. Va. Code § 36B-3-116 (f). Minnesota, the seventh state, does not give HOA assessment liens a super priority unless a senior lienholder forecloses.  See Minn. Stat. § 515B.3-116.

1  make them two distinct variants of non-judicial foreclosure and comparison of the effects of one

2  do not bear on the other.  While there are many similarities between the HOA lien foreclosure

3  and the non-judicial foreclosures under Chapter 107, they are different in several key areas that

4  make application of the results of one inappropriate to the other.  The biggest differences

5  between Chapter 107 and Chapter 116 now relate to notice.  While both Chapter 107 and

6  Chapter 116 require that the foreclosing entity record a Notice of Default and Election to Sell[3]

7  Chapter 107 also expressly requires recording and mailing the Notice of Default and Election to

8  Sell and the Notice of the Foreclosure Sale[4] to any "person with an interest"[5] – that is to the unit

9  owner and all lienholders – but Chapter 116 only requires the Notice of Default and Election to

10  Sell[6] and the Notice of the Foreclosure Sale[7] be recorded and mailed to the unit owner (or

11  anyone who has formally requested notice).  When Nevada adopted the UCIOA in 1991, the Act

12  required that the HOA lien foreclosures be done in accordance with the traditional foreclosures

13  in the state.[8]  When the Legislature adopted the Act in 1991, it did just that and required that the

14  foreclosure of HOA liens follow all the requirements of N.R.S. 107.090.[9]  It required notice of

---

[3] See N.R.S. 107.080(2)(c) and N.R.S. 116.31162(1)(a).
[4] N.R.S. 107.090(3) provides,
     **The trustee or person authorized to record the notice of default shall**, within 10 days after the notice of default is recorded and mailed pursuant to N.R.S. 107.080, cause to be deposited in the United States **mail** an envelope, registered or certified, return receipt requested and with postage prepaid, containing **a copy of the notice, addressed to:**
     ***
     (b) **Each other person with an interest whose interest or claimed interest is subordinate to the deed of trust.** (Emphasis added.)
[5] N.R.S. 107.090(1) provides,
     As used in this section, "person with an interest" means **any person who has or claims any right, title or interest in, or lien** or charge upon, the real property described in the deed of trust, as evidenced by any document or instrument recorded in the office of the county recorder of the county in which any part of the real property is situated. (Emphasis added.)
[6] See N.R.S. 116.31163(1) and (2).
[7] See N.R.S. 116.311635(1)(a)(1).
[8] Uniform Common Interest Ownership Act (1982) provided at § 3-116(j)(4): "The association's lien may be foreclosed as provided in this subsection: … (4) In the case of foreclosure under [insert reference to state power of sale statute], **the association shall give reasonable notice of its action to all lien holders of the unit whose interest would be affected.**" (Emphasis added.)
[9] 1991 Statutes of Nevada, Page 569, Sec. 104, provided,

1  sale be given to all lienholders and the unit owner.  Under those circumstances, it made some

2  sense that the foreclosure sale would extinguish all liens because all lienholders got notice.

3  However, in 1993 the Legislature removed the requirement of notice of sale to all lienholders

4  and only required notice to the unit owner.[10]  The comments in the Legislative History make

5  clear this was done to make easier for the associations, but give "fairer notice to the delinquent

6  unit owner" because the then-existing law did not "provide good notice [to the homeowner] and

7  [did] not conform with Nevada practice in similar situations."[11]  Recall that N.R.S. 107.090(3)

8  required the notice be recorded but also mailed to the homeowner.

9        If the right to receive notice from the statute is removed, and the first priority secured

10  interest can be extinguished by the HOA lien foreclosure sale, then the holder of that interest

11  suffers a violation of its right to due process.  If the right to receive notice is removed but the

12  first priority status is preserved, the due process rights are not threatened.  This is precisely the

13  scenario the 1993 Legislature had in mind at the time of the 1993 amendment which created the

14  variant to the non-judicial foreclosure scheme peculiar to HOA liens.  Section 6 amended N.R.S.

15  116.3116 et seq. regarding the notice provisions required of the HOA. As mentioned above, it

16  was intended to make it easier for the association but increased the probability of the unit owner

17  receiving notice of the delinquency and sale.  Section 37 specifically amended N.R.S. 116.31162

18

19
20
21
22
23  
24
25
26
27

   **1.   The provisions of N.R.S. 107.090 apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed.** The request must identify the lien by stating the names of the unit's owner and the common-interest community. **The association must also give reasonable notice of its intent to foreclose to all holders of liens in the unit who are known to it.**  (Emphasis added.)
N.R.S. 116.31168(1) was amended accordingly.
[10] 1993 Statutes of Nevada, Page 2373, Sec. 40, provided,
   N.R.S. 116.31168 is hereby amended to read as follows:
   116.31168   1.   The provisions of N.R.S. 107.090 apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed. The request must identify the lien by stating the names of the unit's owner and the common-interest community. [The association must also give reasonable notice of its intent to foreclose to all holders of liens in the unit who are known to it.]
The brackets indicate the deleted provision.
[11] See the Legislative History of AB 612 (1993) revising the UCIOA, attached to Defendant's Brief as **Exhibit A**, page 27.

28

regarding that requirement for mailed notice.  The Comment to Section 37 in the memorandum of May 19, 1993, indicated[12]:

> Some commentors are concerned that the lien section in N.R.S. 116.31162(b) only allows priority to a first lien. The coordination between 31162(a) and 31162 (b) is an interesting problem.[13]

> There is a counter argument to the 31162(b) which is this limitation prohibits the homeowner from taking an additional borrowings on his condominium, when he knows an association lien is coming. On the other hand, it does limit the flexibility of the owner of the unit at any association. This limitation should not be too severe in as much as it really only requires that the lender and the title people inquire from the association as to whether or not any assessments are owing.

**First and foremost, these comments reaffirm the priority of the first deed of trust over the assessment lien**; the first deed of trust has priority because it is recorded prior to the assessments becoming delinquent. Second, they recognize that junior lienholders do not enjoy that priority. Third, they recognize that the changes which remove the requirement that the notice of delinquent assessments be recorded would affect any subsequent lienholders and may interfere with the unit owner's ability to get additional financing.  The title company would look at the recorded documents under then-existing practice and see the notice of delinquent assessment and would advise the potential lender accordingly. The potential lender would then have notice that its junior deed of trust would be subject to the lien and possible subsequent foreclosure sale where it could be extinguished.  Without the recording, they would not get that record notice. But that was a minor effect since the title company before issuing a title policy and the potential subsequent lender would simply have to inquire of the HOA if an assessment was owing.  The only reasonable conclusion to be drawn from these comments is that the first deed of trust has priority unaffected by the subsequent assessment liens so it did not have to get actual notice by mail or constructive notice by recording of the notice of delinquent assessments, unlike the subsequent lienholders who do not enjoy that priority.

The 7912 Limbwood Order fails to consider, or at least recognize, the monumental changes effected by the 1993 amendments creating the variant form of non-judicial foreclosures

---

[12] See the Legislative History of AB 612, attached to Defendant's Brief as **Exhibit A**, page 30.
[13] While the reference is to "116.31162," it is clear from the context that N.R.S. 116.3116(2) regarding priorities was being discussed and not N.R.S. 116.31162 regarding mailing of notices.

peculiar to HOA liens. The 1993 Legislative History was not part of the record.   Nor did the 7912 Limbwood Order even mention it.  The 7912 Limbwood Order could only be as good as the record before the court.  This Court does not suffer that shortcoming as the 1993 Legislative History is before it.  Since the 7912 Limbwood Order did not consider the monumental changes effected by the 1993 amendments, his decision should not be deemed persuasive by this Court; it should be given no weight.

The importance of notice to the persons of interest is so important under Chapter 107 that "the person who did not receive such proper notice may commence an action pursuant to subsection 5 within 120 days after the date on which the person received actual notice of the sale" for wrongful foreclosure in which damages and an "injunction enjoining the exercise of the power of sale until the beneficiary, the successor in interest of the beneficiary or the trustee complies with the [notice and ability to cure] requirements."[14]  No such right to pursue wrongful foreclosure and enjoin the sale exists in Chapter 116.  Also when the Act was adopted in Nevada in 1991, N.R.S. 107 required that all lienholders had the right to cure the deficiency and avoid foreclosure. Under Chapter 107, the foreclosure sale cannot go forward unless the unit owner and every person of interest have had the opportunity to cure the default.[15]  When Chapter 116 was amended in 1993, it changed the foreclosure procedure in ways peculiar to 116 and removed the express right of lienholders to cure. The notice then only provided for a warning that if the unit owner did not cure, the unit owner could lose its interest.  Under Chapter 116 as amended in 1993 and existing today, only the unit owner is specifically advised it has the right to pay the amount specified in the notice before the sale date or lose its home.[16]

Central to Judge Gordon and Judge Pro's decisions is the view that a foreclosure under Chapter 116 should extinguish the interests of all lienholders including the holder of the first position deed of trust because a foreclosure under Chapter 107 does.  The analysis is flawed,

---

[14] See N.R.S. 107.080(7)(a) and (b).

[15] See N.R.S. 107.080(2)(a)(2) ("The power of sale must not be exercised, however, until: …the grantor, the person who holds the title of record, a beneficiary under a subordinate deed of trust or any other person who has a subordinate lien or encumbrance of record on the property has, for a period of 35 days … failed to make good the deficiency in performance or payment.")

[16] See N.R.S. 116.311635(3)(a) and (b).

however, since the procedures under Chapters 107 and 116 are materially different; they create variant forms of foreclosure. The requirements of notice and opportunity to cure under Chapter 107 provide the protection of constitutionally protected rights, absent under the Chapter 116 procedures.

Central to Judge Gordon and Judge Pro's decisions on this issue is the comment in the UCIOA that it was expected that the first lienholder would pay the super priority portion of the lien and protect its interest from being extinguished.[17] And the way the Act was initially adopted in Nevada his expectation may have had some weight. But when the lienholder is no longer required to get notice of the sale and is no longer expressly permitted to cure the deficiency, that analysis must fail. And as we have seen in increasing number of cases, the HOA's were refusing to provide the lenders the amount of the deficiency and in particular the 9-month super priority amount and even refusing the lender's offer to cure. If they are not required to get notice and the HOA is not required to accept payment, then they cannot protect their interests.

Judge Gordon and Judge Pro also failed to consider that the holder of the first priority deed of trust would only be required under the model Act to pay the super priority portion of the deficiency – then six months and now nine months – leaving the sub-priority portion unpaid. In that circumstance the third party buyer would still lose what it paid for that portion when the holder of the first foreclosed. Recall the Nevada Real Estate Division Advisory Opinion, p. 9, where it expressly contemplates "an imminent foreclosure of the first security interest" would wipe out the subordinate portion of the delinquency. Actually, Judge Gordon and Judge Pro seemed to have ignored the fact that the third party buyer is not so innocent because it went into the sale knowing that the holder of the first position deed of trust could foreclosure at any time because the deed of trust was recorded and gave them notice, and if they owned their interest in the property at the time the holder of the first position security interest began its foreclosure, the third party buyer is required but N.R.S. 107.090 to not only get notice of the default and of the sale but is also expressly given the right to cure the default on the first – as it would be a "person of interest" – and avoid losing its interest. Because the holder of the first position deed of trust

---

[17] See UCIOA (1982), Comment 2.

does not get notice of the default or of the sale on the HOA lien, under the current Chapter 116 procedure, it instead must be the innocent party. Because of these critical differences, the effect of a foreclosure under Chapter 116 cannot be compared to the effect of a foreclosure under Chapter 107

### 1. Judge Tao's Recent Decision Regarding N.R.S. 116 Negates the Arguments Asserted by Plaintiff Regarding "Due Process."

Judge Tao has recently issued a decision on the interpretation of N.R.S. 116 that overturns the analysis of N.R.S. 116 in the First 100, LLC v. Burns, et al., (Eighth Judicial District Court Case No. A-13-677693-C), case.[18] In Paradise Harbor Place Trust v. Deutsche Bank, National Trust Company, et al., Case No. A-13-687846-C, Judge Tao partially granted Defendant's Motion to Dismiss based on the potential violation of the constitutional protections afforded to lienholders.[19] Judge Tao stated that the procedures used in a non-judicial foreclosure by an HOA may violate the Due Process Clause of both the U.S. and Nevada Constitutions. Judge Tao noted that "the question of due process or lack thereof is a very serious flaw inherent in the plain language of the statute . . . because if a statute, as literally interpreted and applied by this Court, potentially (and in some cases actually) results in an unconstitutional deprivation of a party's property interest without even minimal notice or an opportunity to be heard, the one of two conclusions must logically follow: either the statute is unconstitutional and therefore void, or the statute has not been understood correctly by the parties and/or the Court." Judge Tao concluded that regardless of whether a specific Defendant was afforded notice in a particular case, "the statute is unconstitutional because is facially permits some property rights to be extinguished in at least some cases without any notice or opportunity to be heard."[20] Similar to Paradise Trust, the Complaint in this case and Plaintiff have failed as a matter of law to present any evidence that the due process rights of the lienholders were met by the HOA Sale. Plaintiff has failed to provide any evidence that the Defendants in this case received any "notice" of the

---

[18] Judge Gordon, in Holmes, relied on the First 100 case and found "Judge Tao's analysis in that order persuasive."
[19] See Order attached to the Defendant's Brief as **Exhibit B.**
[20] See page 5 of the Order attached to the Defendant's Brief as **Exhibit B.**

HOA Sale or that Wells Fargo received "notice" of the super-priority lien amount.  The failure to plead the basic facts necessary to establish a due process claim under N.R.S. 116 – not to mention the failure to allege the essential element that the HOA lien subject of the sale included any super-priority amounts – requires the Court to grant the Defendant's Motion to Dismiss the Complaint.

In addition, Plaintiff asserts that the mortgage protection language stated in the CC&Rs should be disregarded because the CC&Rs contradict with N.R.S. 116.3116 et seq.  The argument by Plaintiff is erroneous because the CC&Rs are a necessary component to the due process argument asserted by Wells Fargo. Plaintiff relies on the Court's Order in the 7912 Limbwood v. Wells Fargo Bank, N.A. et al., 2013 WL 5780793 (D. Nev.) case, where the Court dismissed the CC&Rs based on the fact that the banks had "notice" of the HOA and the potentiality of an HOA Sale based on a super-priority lien due to the recording of the CC&Rs prior to the recording of a deed of trust.[21]  The argument fails to consider the type of "notice" afforded to banks by the recording of the CC&Rs, for the CC&Rs provided "notice" to Wells Fargo that a sale by the HOA, even a sale based on a super-priority lien, would not displaced the secured status of Wells Fargo's Deed of Trust.  The Court's reliance on "notice" of the recording of the CC&Rs fails to consider the fact that nowhere in the CC&Rs does it state that the HOA Sale of a super-priority lien will extinguish a first position Deed of Trust.  The lack of notice of a potential extinguishment influences the interaction between the banks and the HOA regarding payment of the HOA Liens and "notice" of an HOA Sale.  The Court cannot disregard the CC&Rs and the "notice" given to banks and yet consider the banks in a better position to pay the HOA Liens.  In addition, the HOA lien documents recorded in the chain of title, which formed the basis of the HOA Sale, do not contradict the "notice" provided by Wells Fargo in the CC&Rs, for the HOA lien documents do not state that a first position Deed of Trust would be extinguished or provide the super-priority lien amount.  To disregard the CC&Rs in lieu of the statutory construction of N.R.S. 116 violates the due process rights of Wells Fargo, for the Court would be negating a crucial part of the "notice" argument.  Therefore, the Court should interpret

---

[21] See 7912 Limbwood Order attached to the Defendant's Brief as **Exhibit C.**

1  N.R.S. 116 in conjunction with the CC&R's mortgage protection clause, protect Wells Fargo's

2  first Deed of Trust and grant the Defendant's Motion to Dismiss the Complaint.

3      **2.  Payment Of The Lien Is Not An Option If The Holder Is Not Required To Get Notice And Have The Right To Cure The Delinquency.**

4

5      The context of Comment 1 of the UCIOA is a foreclosure by an HOA, with a first deed

   of trust still encumbering the Property.  When no lienholder, much less a holder of a first deed

6  of trust, is required to get notice of the sale and is no longer expressly permitted to cure the

7  deficiency, that analysis must fail.  Under N.R.S. 116.31163 and N.R.S. 116.311635, an HOA is

8  only required to mail copies of the Notice of Default and Notice of Sale issued in connection

9  with an HOA foreclosure sale to a prior lienholder if the prior lienholder specifically notifies the

10  HOA of the existence of its lien.[22]  And as we have seen in increasing number of cases, the

11  HOA's refuse to provide the lenders the amount of the deficiency and in particular the 9-month

12  super priority amount and even refuse the lender's offer to cure.

13      The UCIOA does not compel extinguishment of the first deed of trust and the expectation

14  that the holder would likely pay the deficiency cannot be realized without notice, an opportunity

15  to pay and a requirement that the HOA accept the amount tendered by the holder.  If the Nevada

16  Legislature had intended for the foreclosure of an HOA lien to extinguish a first deed of trust, it

17  would have required the HOA to notify the holder of the deed of trust *in every instance.*

18      **3.  Other Legislative Sessions Consistently Recognize The Priority Of The First Deed Of Trust.**

19

20      The 2009 Session extended the period of the super-priority from six to nine months.  See

21  2009 Nev. Stat., Page 1207.  This was deemed necessary "because foreclosures are now taking

22  up to two years. At the time the original law was written, they were taking about six months. So,

23  as the time frames moved on, the need has moved up."[23]  AB 204 extended the period of priority

24

25  [22] This lack of mandatory notice makes sense if Defendant's interpretation of NRS 116.3116(2) is correct.  If an HOA Lien does not extinguish a senior deed of trust, see NRS 116.3116(2)(b),

26  and the HOA is only entitled to a payment priority equal to nine months' worth of assessments, see NRS 116.3116(2), there is no reason for the HOA to give notice of its lien foreclosure sale to

27  a senior lien holder whose interest cannot be wiped out by the HOA.

28  [23] See Hearing on AB 204 Before Assemb. Comm. on the Judiciary, 75th Legislature, p. 34 (2009) (Statement of Assemblyperson Ellen Spiegel), attached the Defendant's Brief **Exhibit F**.

1  because an HOA can only collect its super-priority assessments after the senior deed of trust

2  beneficiary forecloses on the property. Bank foreclosures were taking longer in 2009 than they

3  were in 1991; therefore, Nevada's Legislature extended the priority period to protect the HOAs.

4  This move would have been unnecessary if HOAs could simply foreclose on their super-priority

5  lien before a first deed of trust beneficiary. They could of course foreclose and extinguish the

6  interests of the unit owner and the holders of all other deeds of trust.

7      The 2011 session again considered amending NRS 116.3116(2) with Senate Bill 174.[24]

8  Mr. Buckley testified regarding the 2009 amendment to NRS 116.3116(2) and explained the

9  meaning of a super priority lien, "The Uniform Common Interest Ownership Act was adopted

10  wherein, if a first mortgage holder forecloses on a common-interest community (CIC) unit, the

11  association can be paid six months of the dues owed, which is called superpriority. This was

12  expanded to nine months, except for condominiums." The 2011 Session did amend NRS

13  116.310312 because, again explained by Mr. Buckley, "homes were abandoned, foreclosed upon

14  and falling into disrepair. This section allows the association to maintain an abandoned or

15  foreclosed property. The costs expended by the association are a superpriority lien against the

16  property." This amendment is significant in defeating one of Plaintiff's arguments, Opposition,

17  at p. 13, that "NRS 116.3116 is not the only statute providing a super priority. NRS 116.310312

18  allows an HOA to have a super priority lien that may be non-judicially foreclosed for

19  maintenance or abatements costs," and provides the lien described in NRS 116.310312(4) "is

20  prior and superior to all liens, claims, encumbrances and titles other than the liens described in

21  paragraphs (a) and (c) of subsection 2 of NRS 116.3116" but does not except out the first deed of

22  trust, so the Legislature knows how to eliminate that priority if it intended to.

23      Mr. Buckley again explained the meaning of an HOA "super priority lien"[25]:

24      We are not changing the super priority lien. It will be six to nine months, which is what
       the law states now. **Once an HOA gets paid the super priority lien, it no longer has a**

25

---

26  [24] See Hearing on SB 174 Before Senate Comm. on the Judiciary, 76th Legislature (2011)
    (Statement of Michael Buckley, Commission, Las Vegas, Commission for Common Interest

27  Communities Commission, Real Estate Division, Department of Business and Industry; Real
    Property Division, State Bar of Nevada), attached the Defendant's Brief as **Exhibit G**.

28  [25] See Hearing on SB 174, on May 17, 2011, attached to the Defendant's Brief as **Exhibit G**.

**lien against the unit. That is existing law.** When an investor buys a unit and resells it, it is great for the association who gets new owners because they start paying the dues on the unit that was foreclosed. ... We are not changing the law or the super priority lien. What we are trying to do is to clear up the title once the association has been paid its super priority lien. **The association can only get the super priority lien if there is a foreclosure by the first mortgage.** If there is no foreclosure by the first mortgage, the HOA could foreclose. **Super priority lien deals only with the foreclosure by the first mortgage.** (Emphasis added.)

This explanation makes clear that, under the existing NRS 116.3116, the association can only get the super priority lien if there is a foreclosure by the first mortgage.[26] It also makes clear that the HOA can still (non-judicially) foreclose (under NRS 116.31162-116.31168), but there is no super priority lien. This could not be clearer.

In 2013, Nevada's Legislature again considered amending NRS 116.3116 with Senate Bill 280.[27] In the Minutes of May 17, 2013 before the Nevada Assembly Committee on Judiciary, 77th Session, pp. 65-68, it was acknowledged by Chairman Frierson that there had been a move to amend NRS 116.3116 to provide that a HOA foreclosure sale would extinguish the first deed of trust. Instead the committee adopted an amendment that expressly provided that (in section 15, subsection 5): "'The foreclosure by sale of the super-priority lien does not extinguish the first security interest' A purchaser of the lien at the foreclosure sale acknowledges they are buying subject to the first security interest or the record deed of trust." Chairman Frierson explained that change was deemed necessary to "clarify that the title is subject when there is an HOA foreclosure sale to the first, and that way when someone makes the purchase of the HOA, they know what they are getting. The intent is to make sure that it stabilizes the market and that there is certainty in that title and folks know what they are getting. Hopefully, it will resolve lawsuits and things that reflect a lack of clarity regarding that title." It was in response to

---

[26] See also Senator Allison Opening's testimony regarding the existing state of the Law, and the meaning of "super priority," on June 4, 2011: "The HOAs are currently made whole when the home is foreclosed upon and lending institutions have paid collection costs and other fees as the first lien holder, otherwise known as super-priority. ... When a bank forecloses, the super-priority letter from an HOA, asking for up to nine months of the assessments and collection costs for the association, goes to the first security lien holder. The lender complies and then pays the association." Hearing on SB 174 Before Senate Comm. on Finance, 76th Legislature, pp. 21-22 (2011) (Statement of Senator Allison Opening), attached to the Defendant's Brief as **Exhibit G.**
[27] See Legislative History (2013) (SB 280) attached to the Defendant's Brief as **Exhibit H.**

them "receiving phone calls from judges, attorneys, and lenders regarding the uncertainty of title in this dilemma during the last couple of years, this language was something that could address it, and this vehicle was an appropriate and germane way to do it…" and was considered a means to "really clarify[y] some title issues and uncertainty issues in the real estate market." Senate Bill 280 (1st Reprint) with the amendments discussed that day was then passed unanimously. There followed a subcommittee meeting with members of both houses and ultimately neither this clarification, nor the prior version providing for extinguishment, was adopted; both were eliminated without comment.  However, part of S.B. 280 was enacted and did go into effect October 1, 2013.  NRS 116.31162 was amended to add subsection 6, which provided that the HOA could not foreclose its lien on owner-occupied housing if the holder of the first deed of trust or its successors or agents had recorded a notice of default and election to sell, proceeded through the Foreclosure Mediation Program and recorded the certificate permitting it to foreclose under NRS 107.086(2)(d)(1) or (2).  It makes no sense to expressly preclude the HOA from foreclosing just because the lienholder was foreclosing if the HOA foreclosure could extinguish the deed of trust.  This amendment supports a finding that, in the Legislature's view, the first deed of trust has priority over the HOA lien and would not be extinguished by the HOA foreclosure sale.

The Legislative history is consistent in recognizing that the super-priority only exists if the holder of the first trust deed forecloses. It is also consistent in recognizing that any purchaser at an HOA lien foreclosure sale takes subject to the superior first deed of trust.

**B. THE REQUIREMENT THAT THE HOA MUST INITIATE "AN ACTION" TO TRIGGER THE EFFECT OF A "SUPER-PRIORITY" LIEN TRACKS WITH THE LEGISLATIVE INTENT TO PRESERVE A FIRST DEED OF TRUST AFTER A NON-JUDICIAL SALE.**

Although Plaintiff disputes this point, at least two well-respected State Court jurists have recently entered Orders confirming Defendant's position on the due process issue.  See **Exhibit D** ("Allf Order") and **Exhibit D** ("Herndon Order") attached to Defendant's Brief.  The non-judicial foreclosure sale by an HOA does not trigger the "super-priority" lien because all lienholders are not afforded the same due process protections that would be present with a

judicial foreclosure or lawsuit. The elimination of the requirement to give mandatory notice to all lienholders in a non-judicial HOA foreclosure shows the legislative intent to preserve the liens met under N.R.S. 116.3116(2)(a) and (2)(b). The HOA Sale in this case was non-judicial; therefore, Wells Fargo's deed of trust was not extinguished by the HOA Sale because the HOA did not institute "an action" to trigger the "super-priority" lien.

The Allf Order specifically concludes as a matter of law:

> 5. Both State and Federal constitutional due process guarantees are offended if the first security mortgagee's interest may be voided by non-judicial foreclosure for an assessment lien, relatively nominal in value, without notice to the otherwise senior interest mortgagee, and if an opportunity is not provided to the mortgagee to argue its position, or to pay, the assessment amounts in order to avoid the risk of losing, in this case, an $885,000 first security interest in Subject Property. While the Court acknowledges that N.R.S. 116.311635(1)(b)(2) does not absolutely require, notice to the holder of a recorded security interest, failure to provide notice is a deprivation of due process. Accordingly, N.R.S. 116.3116(2)(c) must be construed to require a civil action to trigger and foreclose an HOA's super priority lien.

The Herndon Order specifically concludes as a matter of law: "2. Under Nevada Revised Statutes 116.3116, for an HOA's lien to obtain super priority status an HOA must institute an 'action to enforce the lien.' 3. Under Nevada Revised Statutes 116.3116, an "action to enforce the lien" means a judicial foreclosure, not a non-judicial foreclosure." While these decisions may not be binding on this Court, these decisions are cited to provide the Court with the position of well-respected state court judges who have ruled on this issue. Thus, these decisions may be helpful and persuasive to the Court.

Plaintiff alleges that because Chapter 40 states that a lien under Chapter 116 is not considered a "mortgage," that a judicial foreclosure of a lien under Chapter 116 is not authorized. First, as noted above, Judges Allf and Herndon have both interpreted Section 116.3116's use of the term "action" to mean that a judicial foreclosure must be conducted to enforce the super priority lien created under that section. Second, N.R.S. § 116.3116(6) clearly states that "this section does not prohibit actions to recover sums for which subsection 1 creates a lien or prohibit an association from taking a deed in lieu of foreclosure." N.R.S. 116.3116 subsections 7 and 10 then further discuss awards of attorney's fees and the appointment of receivers in these "actions." Simply put, Chapter 116 creates its own right to a judicial

1    foreclosure, which has been interpreted by Judges Allf and Herndon to be a requirement to

2    enforce the super priority portion of an HOA lien.  Chapter 40's apparent failure to allow an

3    HOA to judicially foreclose is irrelevant, as that right (and in some circumstances, duty) is

4    contained in Chapter 116.

5          It is for these reasons that the local federal judges addressing these issues have concluded

6    that NRS 116.3116(2)(b) creates only a payment priority lien and the non-judicial foreclosure of

7    such a lien does not extinguish the first deed of trust. In <u>Diakonos Holdings, LLC v.</u>

8    <u>Countrywide Home Loans, Inc.</u>, 2013 WL 531092, Judge Kent Dawson stated that "NRS

9    116.3116(2) creates a limited super priority lien for 9 months of HOA assessments leading up to

10   the foreclosure of the first mortgage, but **it does not eliminate the first security interest."**

11   (Emphasis added.)  That court concluded that the foreclosure sale by a homeowner's association

12   **"takes the property subject to the security interest," even if the beneficiary received notice**

13   **of the HOA foreclosure on the property.** (Emphasis added.)  In <u>Bayview Loan Servicing, LLC</u>

14   <u>v. Alessi & Koenig, LLC et al.</u>, 2:13-CV-RCJ-NJK, Judge Robert Jones also rejected the

15   "extinguishment" theory espoused by the third party buyer in the Complaint.[28]  Judge Jones

16   stressed that the "super-priority" lien and the HOA sale is an unorthodox sale, for the "super-

17   priority amount is senior to an earlier-recorded first mortgage in the sense that it must be

18   satisfied by a first mortgage upon its own foreclosure."  He further stated that "the foreclosure of

19   neither a super-priority lien nor a first mortgage extinguishes the other.  They are in parity with

20   one another in this regard. But a super-priority must be satisfied first out of the proceeds of the

21   foreclosure of a junior lien.  It is 'first amongst equals' in this regard."  See also, <u>Collegium</u>

22   <u>Fund, LLC, Series 5 v. Wells Fargo Bank</u>, N.A., Case 2:13-cv-01550-GMN-VCF,[29] filed

23   09/11/13, where Judge Gloria Navarro found that a "foreclosure sale based on a homeowners

24   association lien recorded against the Property … describes a wholly distinct type of property

25   transfer from one that would give Plaintiff legal title to the property, free and clear of all

26   encumbrances," rejecting the third party buyer's arguments and citations to statutes and case law

27   _____

28   [28] See <u>Bayview</u>, attached to the Defendant's Brief as **Exhibit E.**
     [29] See <u>Collegium Fund</u>, attached to the Defendant's Brief as **Exhibit E.**

1    addressing prioritization of liens and recent Nevada legislation relating to NRS 116.31162.  See

2    also Beverly v. Weaver-Farley, Case 3:13-cv-00348-LRH-VPC, filed 10/09/13, where Judge

3    Larry Hicks concluded, "[T]he statutory scheme does not require an HOA to wait until the holder

4    of the deed of trust forecloses on its interest. Rather, as in this case, the HOA may initiate a non-

5    judicial foreclosure to recover delinquent assessments and **the purchaser at the HOA sale takes**

6    **the property subject to the first security interest**."[30]  (Emphasis added.)

7        A fundamental canon of statutory construction is that, unless otherwise defined, words

8    will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United

9    States, 444 U.S. 37, 42 (1979); see also In re Resort at Summerlin Litig., 127 P.3d at 1079 ("If a

10   statutory phrase is left undefined, this court will construe the phrase according to its plain and

11   ordinary meaning.").  "Action" is not defined in Chapter 116, but the Nevada Rules of Civil

12   Procedure state that "[t]here shall be one form of action to be known as 'civil action' and that a

13   "civil action is commenced by filing a complaint with the court."  Nev. R. Civ. P. 2-3.

14   Moreover, other subsections of N.R.S. 116.3116 clarify that "action" as used in this section

15   means a judicial action. See N.R.S. 116.3116(7) ("A judgment or decree **in any action** brought

16   under this section must include costs and reasonable attorney's fees for the prevailing party."

17   (Emphasis added.)); N.R.S. 116.3116(10) ("**In an action** by an association to collect assessments

18   or to foreclose a lien created under this section, the court may appoint a receiver.") (emphasis

19   added).  This section" — N.R.S. 116.3116 — is clearly contrasted with "N.R.S. 116.31162 to

20   116.31168" which lay out the procedures for non-judicial foreclosure of association liens.  See,

21   e.g., N.R.S. 116.3116(8) ("If the interest of the unit's owner is real estate or if a lien for the

22   unpaid assessments may be foreclosed **under N.R.S. 116.31162 to 116.31168, inclusive**, the

23   statement must be in recordable form." (Emphasis added.)); N.R.S. 116.31169(b) (providing that

24   in a cooperative where the owner's interest in a unit is personal property, the association's lien

25   may be foreclosed as a security interest under the UCC or, if the declaration so provides, "**under**

26   **N.R.S. 116.31162 to 116.31168, inclusive**") (emphasis added).

27

28

---

[30] See Beverly, attached to the Defendant's Brief as **Exhibit E**.

The Nevada Supreme Court construes statutes "to give meaning to all of their parts and language" and will "read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation."[31]  The statute's multiple legislative provisions are to be considered as a whole.[32]  NRS 116.3116(2) cannot be read alone; it must be read with other portions of NRS 116.3116 which refer to the term "action" as a judicial proceeding. Specifically, NRS 116.3116(7) states that "[a] judgment or decree **in any action** under this section must include costs and reasonable attorney's fees for the prevailing party."  NRS 116.3116(11) provides that an HOA may **institute "an action** … to collect assessments or to foreclose a lien created under this section, the court may appoint a receiver to collect all rents or other income from the unit alleged to be due and owing to a unit's owner before commencement or during pendency of the action."  On the other hand, the Legislature knows how to write a statute to give broader meaning if that is what it intended: NRS 116.3116(6) states, "A lien for unpaid assessments is extinguished **unless *proceedings* to enforce the lien** are instituted within 3 years after the full amount of the assessments becomes due."  "Proceedings" can either be a judicial action or a non-judicial foreclosure under NRS 116.31162-116.31168.  The plain meaning and the context of the term "action" under NRS 116.3116 therefore means to commence or institute a lawsuit or judicial action.

Notably, the statutory provisions that address non-judicial foreclosure of an HOA lien do not even contemplate or provide procedures for dealing with what happens under N.R.S. 116.3116(2). As the clear language of N.R.S. 116.3116(2) provides, if the HOA lien does achieve super-priority status, this status is limited to nine months of assessments, followed by first security interests, followed by any remaining amounts of the HOA lien.  Under N.R.S. 116.31164, however, which governs non-judicial foreclosures, the proceeds of the sale are to be applied "in the following order: (1) The reasonable expenses of sale; (2) The reasonable expenses of securing possession before sale...; (3) Satisfaction of the association's lien; (4) Satisfaction in the order of priority of any subordinate claim of record; and (5) Remittance of any

---

[31] <u>Harris Assocs. v. Clark County Sch. Dist.</u>, 119 Nev. 638, 642, 81 P.3d 532, 534 (2003)
[32] See <u>Leven v. Frey</u>, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007).

excess to the unit's owner." N.R.S. 116.31164(3)(c).  The statute simply does not account for the fact that the association's lien can be split into super-priority and sub-priority portions, as provided for in N.R.S. 116.3116(2), or else there would be instructions to pay the super-priority amount of the association's lien, then any subordinate claims of record like first security interests, then the remaining amount of the association's lien.  Quite simply, the procedures laid out in N.R.S. 116.31162 to 116.31168 are distinct from the judicial procedures contemplated by N.R.S. 116.3116.[33]

Defendant asserts that an HOA must "institute an action" in a court when it is seeking to achieve the super-priority of its own lien over a first security interest and thereby extinguish a first security interest. See N.R.S. 116.3116(2); Green Tree Servicing, LLC, Case No. A680704, at *4 (Nev. Dist. Ct. June 19, 2013) (finding that "while N.R.S. §116.3116(2) refers to an 'action' in the foreclosure context, this provision is not applicable when a homeowners' association forecloses pursuant to a claim of 'super priority' lien under N.R.S. § 116.31162 — N.R.S. § 116.31168, the non-judicial foreclosure statutes" and that "in order for a homeowners' association to trigger and/or enforce a 'super priority' lien claim, a judicial foreclosure civil lawsuit must first commence").  Indeed, it would make little sense for N.R.S. 116.3116(8) to state "if a lien for the unpaid assessments may be foreclosed under N.R.S. 116.31162 to 116.31168" if there were not at least some liens for assessments that could not be foreclosed under N.R.S. 116.31162 to 116.31168.

///

///

---

[33] In contrast to N.R.S. 116.31164(3)(c), which governs the distribution of non-judicial HOA foreclosure proceeds, N.R.S. 40.462(2), which is generally applicable to judicial and non-judicial foreclosure sales, provides that proceeds "must be distributed in the following order of priority: (a) Payment of the reasonable expenses of taking possession, maintaining, protecting and leasing the property . . . . (b) Satisfaction of the obligation being enforced by the foreclosure sale. (c) Satisfaction of obligations secured by any junior mortgages or liens on the property, in their order of priority. (d) Payment of the balance of the proceeds, if any, to the debtor or the debtor's successor in interest." Applying this section would properly result in payment of the nine months' worth of assessments (the "obligation being enforced by the foreclosure sale" rather than the association's entire lien), the first security interest mortgage, and then the remainder of the HOA lien "in their order of priority."

**1.   The Language Of N.R.S. 116.3116 Clearly States That To Trigger The Super-Priority Lien The HOA Must File A Lawsuit.**

As the unambiguous language of N.R.S. 116.3116(2) makes clear, liens asserting super-priority status to first security interest are exactly such liens; they can be enforced only upon "institution of an action."  If N.R.S. 116.3116 were not clear enough on its own (which Defendant submits it is), other statutory provisions erase any doubt that "institution of an action" refers to the commencement of judicial proceeding. See, e.g., N.R.S. 17.440 (titled "Action' defined" and stating "Action' means a judicial proceeding or an arbitration. . . ."); N.R.S. 40.430 (titled "Action for recovery of debt secured by mortgage or other lien; 'action' defined" and specifically stating that "an 'action' does not include . . . the exercise of a power of sale pursuant to [the non-judicial foreclosure provision] N.R.S. 107.080") (emphasis added);[34] N.R.S. 118A.040 (titled "Action' defined" and stating "Action' includes counterclaim, crossclaim, third-party claim or any other proceeding in which rights are determined.").[35]  Notably, N.R.S. 118A.040 is part of the same title – Title 10 governing property rights and transactions – as N.R.S. 116.3116 and thereby further demonstrates that "action" has the commonplace meaning Defendants are advocating.  <u>See MGM Mirage v. Nevada Ins. Guar. Ass 'n</u>, 209 P.3d 766, 770 (Nev. 2009) ("[W]e determine that several other statutes falling within Title 57 further demonstrate that 'insurer' has the commonplace meaning that the Legislature prescribed in N.R.S. 679A.100."); see also N.R.S. 112.210 (titled "Rights of creditor in action for relief against transfer or obligation"); N.R.S. 112.230 (titled "Limitation of actions"); N.R.S. 120A.650 (titled "Action to establish claim"); N.R.S. 120A.720 (titled "Interstate agreements and cooperation; joint and reciprocal actions with other states") (all within Title 10 and all supporting the fact that "action" has the "commonplace meaning" of a judicial proceeding).

Decisions of the Nevada Supreme Court and the United States Supreme Court further confirm that courts and legislatures use "action" to refer to judicial proceedings. <u>See Holt v.</u>

---

[34] Where one statute is silent about an issue that another speaks to, courts seek to construe the statutes harmoniously so as to "give effect to both."  See <u>Cromer v. Wilson</u>, 225 P.3d 788, 791 (Nev. 2010).
[35] Accord Black's Law Dictionary 33 (9th ed. 2009) ("Action' in the sense of a judicial proceeding includes recoupment, counterclaim, set-off, suit in equity, and any other proceedings in which rights are determined." (quoting UCC § 1-201(1))).

1    Reg'l Tr. Servs. Corp., 266 P.3d 602, 605 (Nev. 2011) ("But as the name implies, non-judicial

2    foreclosure is not a judicial 'action' . . . ."); Seaborn v. First Judicial Dist. Ct., 29 P.2d 500, 505

3    (Nev. 1934) ("An 'action' is a judicial proceeding, either in law or equity, to obtain certain relief

4    hands of court." (internal quotation marks and citation omitted)); see also BP Am. Prod Co. v.

5    Burton, 549 U.S. 84, 91 (2006) ("Unless otherwise defined, statutory terms are generally

6    interpreted in accordance with their ordinary meaning.  Read in this way, the text . . . is quite

7    clear. . . . The key terms in this provision—'action' and 'complaint'—are ordinarily used in

8    connection with judicial, not administrative, proceedings." (Internal citation omitted.)).

9            Indeed, as used in N.R.S. 116.3116, the specific section being addressed here, "action" is

10   never used to mean anything other than a judicial suit, and nowhere in Chapter 116 (or anywhere

11   that Defendant has found) has the language "institution of an action" ever been used to mean

12   anything other than commencing a judicial lawsuit.  The word "institute" coupled with the word

13   "action" makes the legislative intent here unambiguous.  See Benson v. Zoning Bd. of Appeals

14   of Town of Westport, 873 A.2d 1017, 1022 (Conn. App. Ct. 2005) ("Most importantly, our

15   review of our statutes and appellate case law reveals that 'the institution of an action' has never

16   been held to mean anything other than the filing of a civil action in court." (citing the parallel

17   statute, Conn. Gen. Stat. § 47-258(b), as one example "employing phrase 'institution of an action

18   to enforce' in context of condominium association lien, which requires civil action to enforce"));

19   Costello v. Casler, 254 P.3d 631, 632 (Nev. 2011) (using "institution of an action" in discussing

20   pleadings in a lawsuit); Scrimer v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark, 998 P.2d

21   1190, 1194 (2000) (using phrase when discussing service of process in a lawsuit); Madera v.

22   State Indus. Ins. Sys., 956 P.2d 117, 121 (Nev. 1998) (using phrase when discussing whether a

23   lawsuit can be maintained against worker's compensation system); Nat'l Mines Co. v. Dist. Ct.,

24   116 P. 996, 998, 1000 (Nev. 1911) (using phrase synonymously with "institution of suit").[36]

25   _____

26   [36] See also, e.g., N.R.S. 116.3102(d) (providing that the association "[m]ay institute, defend or
     intervene in litigation or in arbitration, mediation or administrative proceedings in its own

27   name"); N.R.S. 14.010(1) ("In an action for the foreclosure of a mortgage upon real property, or
     affecting the title or possession of real property, the plaintiff, at the time of filing the complaint,

28   and the defendant, at the time of filing his or her answer, if affirmative relief is claimed in the
     answer, shall record with the recorder . . . a notice of the pendency of the action . . . ."); N.R.S.

1        Defendant submits that N.R.S. 116.3116 is clear on its face and that action means judicial

2    action, for that term has been used by the Nevada Legislature for decades, but in the event that

3    the Court finds the statute ambiguous, Defendant submits that legislative intent, policy

4    considerations, and an effort to avoid absurd results all dictate that "institution of an action" be

5    interpreted to mean commencement of a judicial action.  The benefit of requiring a judicial

6    action is that it would protect due process rights as notice and an opportunity to contest the

7    HOA's purported priority are present.  Plaintiff would like this Court to believe that it is

8    somehow equitable and normal to allow HOAs to non-judicially foreclose on a lien for nine

9    months' worth of assessments and thereby completely extinguish an existing security interest

10   worth hundreds of thousands of dollars.  But that is not the case, and no state has enacted a

11   statutory scheme or interpreted an already existing one in the manner Plaintiff is advocating in

12   this case.

13       **2.   A trend exists in states that require the HOA to file a lawsuit to trigger the**
        **super-priority lien.**

14

15       Several states require an HOA or condominium organization to institute judicial

16   proceedings in order to enforce its super-priority lien.  As shown in the table below, Nevada,

17   Massachusetts, Connecticut, and Washington all have similar super-priority provisions.

18

19

20

21   14.010(2) ("A notice of an action affecting real property, which is pending in any United States
District Court for the District of Nevada may be recorded and indexed in the same manner and in

22   the same place as provided with respect to actions pending in courts of this state."); <u>Crestline
Inv. Grp., Inc. v. Lewis</u>, 75 P.3d 363, 365 (Nev. 2003) ("In a separate lien foreclosure

23   proceeding instituted by Acme Sand & Gravel, Inc., against Crestline, the district court deemed
Lewis' lien claim waived for failure to timely file a statement of facts as required by N.R.S.

24   108.239(2)(b)."); <u>Mahaffey v. Investor's Nat'l Sec. Co.</u>, 747 P.2d 890, 891 (Nev. 1987)

25   ("Foreclosure proceedings were then instituted by Mortgage Finance Corp. to collect the money
owed. The district court found . . . ."); <u>First Nat'l Bank v. Fallon</u>, 26 P.2d 232 (Nev. 1933) ("First

26   National Bank in Reno instituted a suit in the district court for Mineral county to foreclose a
mortgage "); <u>State v. Fifth Judicial Dist. Court in & for Mineral Cnty.</u>, 9 P.2d 681, 681 (Nev.

27   1932) ("<u>Grace v. Ward</u> instituted an action in the Second judicial district court in and for Washoe

28   county, Nev., to foreclose a certain chattel mortgage . . . ."); <u>Segale v. Pagni</u>, 250 P. 991, 991
(Nev. 1926) ("This action was instituted to foreclose a mortgage upon a certain ranch.").

| Nevada: | The lien is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to N.R.S. 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to N.R.S. 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien... |
| Massachusetts | This lien is also prior to the mortgages described in clause (ii) above to the extent of the common expense assessments based on the budget adopted Ch. 183A, § 6(c) pursuant to subsection (a) above which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien . . . |
| Connecticut | In all actions brought to foreclose a lien under this section or a security interest described in subdivision (2) of this subsection, the lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of (A) an amount equal to the common expense assessments based on the periodic budget adopted by the association pursuant to subsection (a) of section 47-257 which would have become due in the absence of acceleration during the nine months immediately preceding institution of an action to enforce either the association's lien or a security interest described in subdivision (2) of this subsection |
| Washington | Except as provided in subsections (4) and (5) of this section, the lien shall also be prior to the mortgages described in subsection (2)(b) of this section to the extent of assessments for common expenses, excluding any amounts for capital improvements, based on • the periodic budget adopted by the association pursuant to RCW 64.34.360(1) which would have become due during the six months immediately preceding the date of a |

|   | sheriffs sale in an action for judicial foreclosure by either the association or a mortgagee, the date of a trustee's sale in a non-judicial foreclosure by a mortgagee, or the date of recording of the declaration of forfeiture in a proceeding by the vendor under a real estate contract |
|---|---|

Tellingly, however, Massachusetts, Connecticut, and Washington have all limited the ability of an association to enforce its super-priority lien and allowed it to do so only in judicial proceedings.  See <u>SFR Invs. Pool I, LLC v. US Bank, N.A.</u>, Case No. A-12-673671-C, at *5 Nev. Dist. Ct. Mar. 22, 2013) ("Massachusetts and Washington require a civil action or judicial foreclosure before a super priority lien is triggered and foreclosed.  Although the Court acknowledges that authority from other jurisdictions is not binding, the Court finds persuasive the jurisprudence in Massachusetts and Washington requiring judicial foreclosures to trigger and foreclose super priority liens."  Apart from limited exceptions (such as a municipal tax sale) "[u]nlike many states where a foreclosing bank need never present anything to a judge, Connecticut does not allow non-judicial foreclosures."  <u>Conn. Hous. Fin. Auth. v. Waterman</u>, CV096005603, 2011 WL 383989, at *4 (Conn. Super. Ct. Jan. 6, 2011) (internal citations omitted).  And Massachusetts and Washington have expressly taken the enforcement of super-priority liens outside the realm of non-judicial foreclosure.  See, e.g., Mass. Gen. Laws Ch. 183A, § 6(c) ("A lien under this section shall be enforced in the manner provided in sections five and five A of chapter two hundred and fifty-four."); Mass. Gen. Laws Ch. 254, § 5 ("A lien. . . established under. . . section 6 of chapter 183A shall be enforced by a civil action brought in the superior court. . . or in the district court. . (emphases added); Wash. Rev. Code § 64.34.364(5) ("If the association forecloses its lien under this section non-judicially pursuant to chapter 61.24 RCW, as provided by subsection (9) of this section, the association shall not be entitled to the lien priority provided for under subsection (3) of this section.").

Even states that allow for non-judicial foreclosure of an HOA lien do so expressly and through language other than what the Nevada legislature has used.  See Colo. Rev. Stat. § 38-33.3- 316(2)(b) ("[A] lien under this section is also prior to the security interests described in subparagraph (II) . . . to the extent of: (i) An amount equal to the common expense assessments

1    based on a periodic budget. . . which would have become due, in the absence of any acceleration,

2    during the six months immediately preceding institution by either the association or any party

3    holding a lien senior to any part of the association lien created under this section of an action or a

4    non-judicial foreclosure either to enforce or to extinguish the lien.") (Emphases added.). Indeed,

5    Colorado's statute further demonstrates that "an action" is understood to be a judicial

6    proceeding, as opposed to "a non-judicial foreclosure."[37]   Just as in other states, the Legislature

7    in Nevada has not been silent on the issue. It has expressly stated that an HOA has a lien "prior

8    to" first security interests only for assessments and charges due "during the 9 months

9    immediately preceding institution of an action to enforce the lien." N.R.S. 116.3116(2)

10    (emphasis added).  "[A] fundamental canon of statutory construction is that a court must first

11    'presume that a legislature says in a statute what it means and means in a statute what it says

12    there." RTTC Communications v. Saratoga Flier, 121 Nev. 34, 110 P.3d 24, 26 (2005) (quoting

13    Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)); see also Johnson v. S. Pac. Co.,

14    196 U.S. 1, 19 (1904) (in interpreting a statute, a legislature's "intention is found in the language

15    actually used" (internal quotation marks and citation omitted)). Indeed, the fact that the Nevada

16    Legislature chose the words "institution of an action" suggests full-well that it wanted holders of

17    first security interests to have the due process protections of a judicially noticed foreclosure.

18    See, e.g., Mass. Gen. Laws Ch. 254, § 5(A) (providing for specific forms of notice to be given

19    before a judicial sale takes place and providing for court determination of the amount of the

20    lien).

21        Defendant submits that the Nevada Legislature did not provide for non-judicial

22    foreclosure of the super-priority lien because it knew it was doing something extraordinary by

23    granting super-priority status to the HOA lien in the first place, and it wanted lenders to have the

24    notice and due process protections guaranteed by a judicial proceeding.  See, e.g., Comment 1 to

25    _____

26    [37] And even in Colorado, there is no reported case of an HOA foreclosing on a lien non-judicially
and thereby extinguishing a first security interest. See, e.g., BA Mortg., LLC v. Quail Creek

27    Condo. Ass 'n, Inc., 192 P.3d 447, 454 (Colo. Ct. App. 2008) ("The association argued that its
lien covered all of the outstanding assessments, which was correct. However, the same is not true

28    for the super-priority lien which came into effect upon the commencement of the lender 's
foreclosure proceeding and was limited to six months of assessments.").

the Uniform Act § 3-1116 (recognizing that giving an HOA lien priority over first security interests for a limited number of monthly assessments is a "significant departure from existing practice" and asserting that this limited priority "strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of lenders"). Thus, where the HOA forecloses first and seeks to extinguish the first security interest (rather than allow it to continue on the property or allow the lender to pay off the nine months' assessments demanded by the association), a judicial action should be required for such a significant departure from existing practice. See Paradise Harbor Place Trust v. Nationstar Mortg., LLC, Case No. A675227, at *4 (Nev. Dist. Ct. July 17, 2013) ("N.R.S. §116.3116 refers to a judicial foreclosure action and is not applicable when the home owner's association forecloses under the non-judicial foreclosure statutes."); Deutsche Bank Nat'l Trust Co. v. The Foothills at MacDonald Ranch, Case No. A-13-680505-C, at *8 (Nev. Dist. Ct. June 6, 2013) ("Stating it a different way, the institution of an action or suit brought in a court is a condition precedent to elevating the status of the association's junior lien to 'super priority."), see also Ducey v. United States, 713 F.2d 504, 510 (9th Cir. 1983) ("[S]tatutes in derogation of common law should be read narrowly.") (summarizing holding of Rush v. Nev. Indus. Comm'n, 94 Nev. 403, 407, 580 P.2d 952, 954 (1978)). "Indeed, if the association's lien was anything but junior to the first security interest, there would be no reason to require an 'action' be instituted in order to grant that lien 'super priority' status." Deutsche Bank Nat 'l Trust Co. v. The Foothills at MacDonald Ranch, Case No. A-13-680505-C, at *6 (Nev. Dist. Ct. June 6, 2013).

Based on the above, Defendant's Motion to Dismiss should be granted because the HOA never instituted "an action" which would trigger the super-priority lien.

## C. PLAINTIFF IS NOT A BONA FIDE PURCHASER BECAUSE PLAINTIFF HAD RECORD NOTICE OF WELLS FARGO'S DEED OF TRUST PRIOR TO THE HOA SALE.

Plaintiff is not a bona fide purchaser if it purchases property with notice of another party's interest in the property. See Hewitt v. Glaser Land & Livestock Co., 97 Nev. 207, 208, 626 P.2d 268, 268-269 (1981). As a matter of law, Plaintiff purchased the Property with knowledge of Wells Fargo's senior Deed of Trust. First, the recording statutes provide

1   "constructive notice" of the existence of an outstanding interest in land, thereby putting a

2   prospective purchaser on notice that he may not be getting all he expected.  "'Constructive notice

3   is that which is imparted to a person upon strictly legal inference of matters which he necessarily

4   ought to know, or which, by the exercise of ordinary diligence, he might know.'"  <u>Allison Steel</u>

5   <u>Mfg. Co. v. Bentonite, Inc.</u>, 86 Nev. 494, 497, 471 P.2d 666, 668 (1970) (quoting, 8 Thompson

6   on Real Property § 4293, at 245 16).

7       Nevada's recording statute provides:

8       Every such conveyance or instrument of writing, acknowledged or proved and certified,
        and recorded in the manner prescribed in this chapter or in NRS 105.010 to 105.080,
9       inclusive, must from the time of filing the same with the Secretary of State or recorder for
        record, impart notice to all persons of the contents thereof; and subsequent purchasers
10      and mortgagees shall be deemed to purchase and take with notice.

11      Plaintiff bought the Property after the CC&Rs and after the Wells Fargo's Deed of Trust

12  was recorded in the Clark County Recorder's Office.  Plaintiff therefore purchased the property

13  with record notice of both the mortgage protection clause and Wells Fargo's senior Deed of

14  Trust.  Second, Chapter 116 also deems Plaintiff to have purchased the property subject to the

15  CC&Rs.  N.R.S. 116.310312(7) provides as follows:

16      A person who purchases or acquires a unit at a foreclosure sale pursuant to NRS 40.430
        or a trustee's sale pursuant to NRS 107.080 is bound by the governing documents of the
17      association and shall maintain the exterior of the unit in accordance with the governing
        documents pursuant to this chapter.
18

19      A person who buys property at a foreclosure sale cannot pick and choose which parts of

20  the CC&Rs are applicable to it.  Plaintiff is bound by the provisions of the CC&Rs, which

21  include the mortgage protection clause.  **Third,** Plaintiff is deemed to have knowledge of the

22  CC&Rs and the mortgage protection clause under the common law.  "The authorities are

23  unanimous in holding that [the purchaser] has notice of whatever the search would disclose."

24  <u>Berger v. Fredericks</u>, 95 Nev. 183, 189, 591 P.2d 246, 249 (Nev. 1979).  In addition to record

25  notice discussed above, Plaintiff was also on inquiry notice because the foreclosure documents

26  themselves stated it the sale was being conducted pursuant to the CC&Rs.  Based on the above,

27  Defendant's Motion to Dismiss should be denied because Plaintiff's Complaint fails as a matter

28  of law to state a claim against the Defendants based on N.R.S. 116.3116.

Under the common law, **Nevada is a race-notice** state **where the first recorded lien has priority over the later or "junior" liens.** "First in time" means "first in right." Thus, under common law, HOA liens did not enjoy any priority over previously recorded deeds of trust.[38] NRS 116.3116(2)(c) **conflicts with the general principles of real property and** departs from this common law norm by affording a limited priority to certain HOA liens **over a *prior* recorded deed of trust.  In this case, the Legislature created a statutory provision that directly conflicts with real property law, thereby negating the applicability of general non-judicial foreclosure law.**  Since statutes in derogation of the common law must be strictly construed**, NRS 116.3116(2)(c) must be strictly construed.  The very inclusion of NRS 116.3116(2)(b) connotes a level of significance in maintaining the priority status of the first deed of trust after the sale by an HOA because no other deed of trust is protected and only nine months of the assessments are protected.**[39]

### III.    CONCLUSION

Based on the above, Wells Fargo's Motion to Dismiss the Complaint should be granted and the Motion to Expunge Lis Pendens should be granted because Plaintiff cannot state a claim against Wells Fargo.

DATED this 10th day of January, 2014.

WRIGHT, FINLAY & ZAK, LLP

Chelsea A. Crowton, Esq.
Nevada Bar No. 11547
5532 South Fort Apache Road, Suite 110
Las Vegas, Nevada 89148
*Attorney for Defendant, Wells Fargo Bank, N.A.*

---

[38] See Daniel Goldmintz, Note, Lien Priorities: The Defects of Limiting the "Super-Priority" for Common Interest Communities, 33 Cardozo L. Rev. 267, 270-271 (2011).
[39] If the intent of NRS 116.3116(2) were to extinguish first deeds of trust on the property, it would not have protected only nine months. The whole lien would have been protected because it would extinguish all other liens; there would be no super- and sub-priority portions of the lien.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, LLP; that service of the foregoing **DEFENDANT WELLS FARGO BANK, N.A.'S SUPPLEMENTAL BRIEF** was made on the 16th day of January, 2014, to all parties noticed on the CM/ECF.

_____

An Employee of WRIGHT, FINLAY & ZAK, LLP